CUTRER, Judge.
This is an appeal from the trial court’s interpretation of a marriage contract. The issue of interpretation arose out of a suit for partition of the community property.
Katie M. LeBlanc (Katie) and Robert Bul-ler (Robert) entered into a marriage contract on June 9, 1976. The contract provided that any mineral royalties due either spouse would remain that spouse’s separate property. In all other respects, the marriage was governed by the legal matrimonial regime; community of acquets and gains. The marriage contract was filed into the conveyance records in the Parish of Lafayette, the matrimonial domicile. Katie and Robert were subsequently married on June 12, 1976, in Lafayette, Louisiana.
Katie filed a petition for separation from Robert on August 27, 1979, based upon his alleged abandonment of her on August 9, 1979. Robert answered and filed a recon-ventional demand alleging constructive abandonment on the part of Katie and/or mental cruelty. Katie answered the recon-ventional demand denying its allegations. Judgment was rendered on January 7,1980, granting a separation based upon mutual fault.
On January 24, 1980, Robert filed a petition for divorce based upon Katie’s adultery which she denied in her answer. Robert filed a petition for partition of community property on July 23, 1980. Katie answered the partition petition and further alleged:
". . . that she is the owner of an undivided one-half interest in and to any and all royalty payments, fruits and revenues, bonuses or any other assets whatsoever deriving from the Grosse Isle Oil field and the St. Martinville oil field, together with an accounting from Robert Buller for any and all sums he received during the existence of the community, and subsequent thereto until said accounting is made, together with a future share in such assets equivalent to one-half the value of the same.”
Upon trial of the partition suit, the trial judge reviewed the marriage contract, the mineral lease and the assignment of an overriding royalty interest to Robert by Dynamic Exploration. He found the marriage contract to be clear and unambiguous and, therefore, refused to allow Katie or any other witness to testify concerning the intent of that marriage contract in regard to *899 the ownership of the mineral royalties. The trial judge found parol evidence to be inadmissible. Judgment was rendered holding that certain mineral royalties were the separate property of Robert as per the marriage contract. The judgment also ordered the partition by licitation of the community immovable property, subject to the reimbursement owed to Robert for one-half of all payments for mortgage notes, taxes, maintenance and interest. Each spouse is to receive one-half of the remaining proceeds.
Katie appeals from the adverse judgment on her claim for one-half of the oil royalties paid to her husband. We affirm.
The sole issue presented on appeal is whether the trial court erred in finding the marriage contract unambiguous, thereby disallowing parol evidence to show that Katie was owner of one-half of the overriding royalties which had been acquired by her husband.
Upon trial of the matter, certain documents were introduced into evidence by stipulation. These documents were:
(1) A mineral lease of certain lands by Wesley and Margaret Steen to Robert Buller, dated January 30, 1978. (An exhibit attached to the lease shows that this lease was later assigned to Dynamic Exploration, Inc.)
(2) An assignment of overriding royalty interests from Dynamic Exploration to Robert Buller dated December 1, 1978.
(3) The marriage contract, in question, dated June 9, 1976.
Counsel for Katie then attempted to introduce parol evidence to support Katie’s claim for one-half of the overriding royalty interests that had been acquired by Robert during their marriage. Katie contended that she should be allowed to introduce the parol evidence to show the “common intent of the parties” to the marriage contract.[1] Counsel for Robert objected to the evidence on the ground that the marriage contract clearly reflected the intent of the parties and that, since the overriding royalty interests were acquired by and in Robert’s name, such royalties were his separate property according to the unambiguous terms of the contract. The trial judge sustained the objection and disallowed the parol evidence.
This brings us to the question on appeal as to whether the marriage contract clearly expresses the intent of the parties. Only three sentences make up the substantive provisions of the contract which provide:
“The said intended husband and wife do formally agree that all royalty income shall be the separate income and property of the spouse in whose name the right to receive said royalty income is recorded or otherwise determinable. This reservation of royalty income as the separate income of either spouse shall apply to royalty income presently being received by either spouse and to any royalty income which either spouse shall receive after the date of marriage, whether such royalty income receivable after the date of marriage is due to contracts entered before the marriage or after the date of marriage. It is thus the purpose and intent of the parties that royalty income shall never form a portion of the community of acquets and gains otherwise existinsr between the said intended spouses, but shall remain the separate property and income of the spouse in whose name the risrht to receive said royalty originates. ” (Emphasis added.)
Counsel for Katie reiterates in its brief only the first sentence of the contract contending that the words “or otherwise determinable” opens the door to the parol evi *900 dence as these words render unclear the intention of the parties to the contract. We disagree.
LSA-C.C. art. 1945 provides, in pertinent part, as follows:

“Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify them. Upon this principle are established the following rules:

# if! * * * *
Second — That courts are bound to give legal effect to all such contracts according to the true intent of all the parties;
Third — That the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absured consequences
With these principles in mind, we look at the provisions of the contract as a whole in order to ascertain the intent of the parties.
We cannot isolate a portion of the contract and exclude the other provisions in resolving the question of intent. Counsel’s argument, that the intent of the parties cannot be ascertained from the contract, fails because he relies only on the first sentence of the contract without considering or discussing the remainder thereof and especially the last sentence.
This contract may be said to be unique in that it expressly, clearly and unequivocally sets forth the “purpose and intent” of the parties in the last sentence. We reiterate this sentence which provides:

“... It is the purpose and intent of the parties that royalty income shall never form a portion of the community of acquets and gains otherwise existing between the said intended spouses, but shall remain the separate property and income of the spouse in whose name the right to receive said royalty originates.”

This sentence clearly expresses the intent of the parties that royalty income shall remain the separate property and income of the spouse in whose name the right to receive said royalty originates. It is undisputed that the right to receive the royalties originated in Robert’s name. Since the right to receive the royalties originated in Robert’s name, it became his separate property under the clear provisions of the contract. Parol evidence would be inadmissible to alter the contract.
In summary, after a consideration of the contract in its entirety, it is clear that both parties desired that royalty income would never form a part of the community otherwise existing between the parties, but would remain the separate property and income of the spouse in whose name the royalties originate.
The case of Henry v. Ballard & Cordell Corp., 401 So.2d 600 (La.App. 3rd Cir. 1981), is not applicable. That case dealt with the interpretation of the words “market value” used in mineral leases. The leases contained no provision setting forth the meaning of the term “market value.” Parol evidence was admitted to explain the intent of the parties as to the meaning of the term. In the case at hand, the intent of the parties was clearly set forth, thus, no parol evidence to the contrary is admissible.
The trial judge correctly sustained the objection to the parol evidence and his judgment dismissing Katie’s claims to be recognized as an owner of the royalties in question shall be affirmed.
For these reasons, the judgment of the trial court is affirmed. The costs of this appeal shall be paid by plaintiff-appellant.
AFFIRMED.

. Counsel for Katie contends that the substance of the parol evidence, if allowed, would show that Katie became an employee of Dynamic Exploration after her marriage to Robert. As an employee of Dynamic, she became acquainted with Juan Diliberto, a geologist retained by Dynamic. Diliberto was working on a drilling prospect and apparently needed some assistance in obtaining leases. Katie suggested that Diliberto talk to Robert about assisting him. Katie introduced Diliberto to her husband. Diliberto worked out an agreement with Robert wherein they would work together on the prospect and divide the overriding interest that may accrue therefrom. Robert actively participated in the prospect and, as a result, he was assigned the overriding royalty interests in question.